ROBERT TREMBLAY *v.* CONNECTICUT STATE EMPLOYEES RETIREMENT COMMISSION ET AL.

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 182352

Memorandum filed April 29, 1974

*Paul M. Palten,* of Hartford, for the plaintiff.

*Robert K. Killian,* attorney general, and *David J. Della-Bitta,* assistant attorney general, for the defendants.

JOHN F. SHEA, JR., J.   On August 28, 1968, the plaintiff, who had applied for a job as a fire and security guard at Bradley Field, was given the required preemployment physical examination by the Connecticut state health services for state employees. The examining doctor noted on the medical report blood pressure of 130/88 and a soft systolic murmur at the apex of the heart. X-rays taken showed a normal-sized heart. Laboratory tests showed the urine, blood, cholesterol level, etc., to be normal. The examining doctor found that the plaintiff successfully passed the physical examination required for the job and so notified the state department of aeronautics.

In September, 1968, the plaintiff entered employment in the state service as a fire and security guard at Bradley Field, where he worked until he suffered a heart attack in December, 1969. During the summer of 1969 two incidents occurred which allegedly caused the plaintiff exceptional stress and strain. He was called to assist in subduing an irate butcher's helper who was brandishing a kitchen knife. He had to give first aid, en route to a hospital in Hartford, to a patron who had sustained a heart attack at the field.

Following chest pains, the plaintiff was under the care of Dr. William Beachman of Springfield, Massachusetts, in December, 1969, and was hospitalized for about three weeks. Coronary heart disease was diagnosed, and a systolic murmur was observed. Dr. Beachman consulted with Dr. John Kilgus, chief of the state health services for state employees. It was concluded that the plaintiff was permanently disabled and could not return to his job as a fire and security guard. Shortly thereafter he was released from state service, early in 1970.

The plaintiff's medical records at the state health services for state employees show that on January 22, 1968, the plaintiff had also been given a preemployment physical examination by Dr. Kilgus for a job as correction officer at Cheshire, Connecticut. This examination showed blood pressure of 140/80 and a soft systolic murmur at the apex of the heart. Dr. Kilgus found that the plaintiff successfully passed the physical examination for that job and so notified the department of correction. The plaintiff did not take the job for personal reasons.

On or about March 2, 1970, the plaintiff filed his application for disability retirement benefits with the defendant retirement commission, pursuant to statute. On March 25, 1970, the plaintiff appeared for a hearing before the defendant medical examining board, without counsel but with a representative of the Connecticut State Employees Association.

On April 13, 1970, the defendant retirement commission denied the plaintiff's application "on the grounds that the examination which the applicant passed at entry into State service revealed evidence of hypertension and heart disease." Subsequently, the plaintiff retained counsel who appeared with him on May 13, 1971, at the retirement commission's hearing for reconsideration. Dr. Kilgus testified

at that hearing that the plaintiff's medical records and the medical examinations which he successfully passed on entry into state service showed no evidence of heart disease or hypertension. The plaintiff also submitted for the board's consideration a written report prepared by Dr. Arnold Fieldman, chief of cardiology at the Hartford Hospital. The report stated that Dr. Fieldman had examined the medical records of the state health services for state employees concerning the plaintiff and that the plaintiff's physical examinations had showed no evidence of hypertension or heart disease. The defendants again denied the plaintiff's application on the same grounds. After further proceedings, the plaintiff brought this action in mandamus, seeking an order directing the retirement commission to award retirement benefits.

Title 5 of the General Statutes provides for disability retirement benefits to be paid to a member of the state service. Section 5-169 provided: "(b) If a member . . . becomes permanently disabled from continuing to render the service in which he has been employed as a result of any injury received while in the performance of his duty as a state employee, such member is eligible for disability retirement regardless of his period of state service. . . . (c) The governor shall appoint a medical examining board of three physicians, each of whom is a state employee, to determine whether each applicant for disability retirement is entitled thereto and to report to the retirement commission, as requested by it from time to time, as to the continuance of a disability." (Later amended by Public Acts 1971, No. 627.)

There is also a statutory presumption created by § 5-145a: "Any condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability or death to a member of

the security force or fire department . . . of the . . . aeronautics department . . . who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of such condition, shall be presumed to have been suffered in the performance of his duty. . . ."

The plaintiff claims that in denying his application for benefits the defendants acted in disregard of the facts and law and acted arbitrarily, capriciously and in abuse of any discretion claimed on their behalf.

As indicated from the above statutory provisions, the retirement commission is a statutory agency and is responsible for the administration of the retirement system. It is assisted in this task by the medical examining board, which is required to determine whether an applicant is entitled to disability retirement and to report to the retirement commission. In the instant case, the medical examining board heard evidence and examined the medical records of the plaintiff. It reported that the plaintiff was not entitled to disability retirement.

An examination of the transcript and records of the hearings before the medical examining board makes it clear that the provisions of § 5-145a of the General Statutes were given due consideration. In view, however, of the wording of the statute, which creates the presumption only where the physical examination "failed to reveal *any* evidence" (italics supplied) of hypertension or heart disease, it was felt that the statute was not applicable. In reaching this conclusion, the board members considered the blood pressure readings and observation of a systolic murmur in the plaintiff's preemployment physicals. In carrying out its duties, the board was required to make a discretionary determination and report its conclusions to the retirement commission.

Our Supreme Court recently had occasion to consider when a writ of mandamus properly lies. It was held that mandamus lies only to enforce the performance of ministerial, as opposed to discretionary, duties by public officials. *Lechner* v. *Holmberg*, 165 Conn. 152, 157. Where the official or agency is authorized to exercise a discretionary power, mandamus does not lie. *Hannifan* v. *Sachs*, 150 Conn. 162, 167. Relief by way of mandamus is only available to one who has a complete and immediate right that the public act be done. *Ballas* v. *Woodin*, 155 Conn. 283, 284.

The determination whether the plaintiff was entitled to disability retirement benefits required an act of discretion and the exercise of judgment. In view of the evidence before the medical examining board—in particular, the testimony of Dr. Kilgus—one could quarrel with the decision reached. The court, however, cannot substitute its discretion for that of the retirement commission or the medical examining board. While the determination was inconsistent with other medical opinion, it has not been demonstrated that the defendants acted arbitrarily, capriciously or illegally in the performance of their public duty.

For the foregoing reasons, the writ of mandamus is denied, and judgment may enter for the defendants.